Thank you, your honor. Good morning. May it please the court. My name is August Gugelman. I represent Mr. Alhaggagi, and I'm planning to reserve around three minutes of my time for rebuttal, but I'll keep an eye on the clock. Okay. The parties agreed here that the terrorism enhancement in Section 3A1.4 does not automatically apply just because a defendant has been convicted of material support. There's an additional requirement, which is that the offense conduct has to be calculated to influence the conduct of government by intimidation or coercion, or to retaliate against government conduct. So the question on these facts is what needs to be shown to prove that Mr. Alhaggagi merits not just the substantive offense, but that enhancement. Now in the majority of material support cases, I think it's an easy question because a lot of material support cases deal with conduct that is inherently coercive of government. If a defendant firebombs a courthouse, picks up arms on the battlefield, those are actions that there is no other possible interpretation. That's an action that is calculated to influence the conduct of government by intimidation or coercion, almost without question. But our facts are very different. We have nonviolent conduct. The offense conduct is that Mr. Alhaggagi opened six Twitter accounts. He didn't use them. The record is clear that he didn't know how they would be used. And this is in a period where a single ISIS member boasted of opening 6,000 of these accounts. So it's de minimis assistance. It's nonviolent assistance. Counsel, let me ask the question that I think to me is the difficult one in this case and see how you can help me. The conduct that constituted the offense itself, I think we all agree is not sufficient to establish that it was calculated to do the things that the enhancement prohibits. The question is how much past that elemental conduct can we look to determine what your client's intent was, what he was intending to do. And there's lots of evidence in this case from conversations with FBI agents to downloading of a bomb manual to all sorts of stuff that if was intended to do the things that the enhancement prohibits. So my question is, how far can we look past the simply the elements, what's required to establish the elements of the offense? Because if we can't do that, then this offense can never be where these facts could never support the enhancement. So what's your answer to that? Well, I think your honor has put your finger on the issue here. And I think this is really what's motivating the government's argument. And to some extent, the district court's finding. The question in this case was, Mr. Oligarchy said horrible things, despicable things. Did he mean them or not? That was the question that animated the argument. Well, but see, that's not for me, that's not the critical issue. Because Judge Breyer, Judge Breyer was having listened to him, was entitled to conclude that he meant them. Correct. The real issue is how far outside the offense conduct can we look to establish his intent? And the answer to that, your honor, is I think not very far at all. If Mr. Oligarchy, the parties agree, and the courts have been very clear that a defendant's motive is not the animating factor, is not what justifies imposition of the enhancement. One could imagine, for example, that the petitioners in Holder v. Humanitarian Law might have been sincerely motivated to see violent overthrow of the government, but the actual conduct that they undertook was humanitarian assistance. And so the courts have said the motive... Well, here, the actual conduct... I'm sorry, I know you've got limited time, and I really wanted you to focus on this. Here, the conduct is itself violative of law. And so the question is, what was it intended to do? Sometimes Twitter accounts can be used for nonviolent purposes. Sometimes they can be used for violent purposes, as we see every day in this country, unfortunately. So my question is, when we look for his intent, which is really what the enhancement is doing, was it calculated to bring about these results? How far can we range? Well, and the question specifically is his intent with respect to these accounts. It is not his intent as a general matter, his general attitude towards ISIS or the organization. It is what did he intend these accounts to be done? Counselor, I want to follow up on my colleague's question. I have looked through our case law, and although I may agree with your position, I don't find in our case law a requirement for the specific intent I think you're drilling down to. I find it in other circuits. What is your best argument through case law that in order to have the enhancement here, the government has to show a specific intent by your client in this case to basically satisfy the requirements of a government changing position or retaliation that the enhancement itself mentioned? What's the case law that best supports your position? This court has not spent a lot of time on this enhancement, but the case that addresses this in this court is Tankersley. And what Tankersley said is that after examining the legislative history that it was evident that Congress intended that the enhancement apply where the defendant intended through his offense to influence the conduct of others. So Tankersley very clearly said what we are looking at here is the intent of the defendant with respect to defense conduct. And that was the added element that was inserted to make Section 3A 1.4 apply. And I gather that in your case, you claim that because your client, at least according to the testimony, didn't know what these were being used for, didn't go to the sites, didn't post anything there, that there's simply no evidence that he had the requisite intent. Is that your position? That is the case, Your Honor. And the evidence that he didn't know what these accounts would be used for was uncontroverted. The guy who asked him to open and said, I think you know what I'm planning with these. I think you read about it. He said, no, I didn't. The other point I'd like to make quickly on the general question intent is that although the government's view was that Mr. Oligarchy intended to carry out all these terrible acts, the district court didn't actually agree. The district court agreed that there was a danger here, but the danger of the district court identified was that Mr. Oligarchy might joke about this to the wrong person. So the question of Mr. Oligarchy's intent does not go to, intent generally with respect to ISIS, does not go to the enhancement at all. It goes to the 3553A factors, and certainly it could be a basis for an upward variance if the court found he was serious about those things. Well, counsel, can I ask you a that he was opening these accounts for ISIS, am I right? Correct, your honor. Okay. I don't, I mean, you're not taking the position that he did not understand what ISIS was, are you? Not at all, your honor. But understanding what ISIS is, is an element of the substantive offense. Right. It does not get you to the enhancements. No, I understand that, but it, don't you think a judge is within their rights or within their responsibility to look at the natural consequences? I mean, if you take somebody and you give them a rock, and they, their vowed to kill people, and you give them a rock and you're on a hill, and you hand them the rock, and they let the rock go, and it kills three people, it's pretty hard to argue that circumstantial evidence doesn't show that their intent was to have that happen. I agree, your honor, although that's pretty different from our facts. What we have here is Mr. Oligarchy handing some ISIS members a few pebbles, but we also have the ability for those to be used in one of two ways. As Judge Breyer identified, ISIS social media could be used to recruit adherence, it could be used more directly to intimidate or influence the conduct of government by coercion. And without proof that Mr. Oligarchy knew it was the latter, and intended that it be the latter, the fact that he generally knew and understood ISIS had those goals is not sufficient for the enhancement. Is it fair to say that your position is that the enhancement is inappropriate here because there's no evidence of the specific intent to accomplish what the enhancement required, but Judge Breyer in his evaluation about sentencing within the guidelines and 3553-A and so on, could have taken into account the other statements and so on that your client made. Is that a fair statement? Absolutely. In terms of a variance under 3553-A, having calculated the guidelines without the application of the enhancement, Judge Breyer could have imposed an upward variance on those factors, but those facts do not go to the enhancement. And I see that my time is up. Your time is up. We may give you a little extra time. We take part of your time. Thank you, Your Honor. So let's now hear from the government. Thank you and good morning, Your Honors. Wakar Hasid for the United States. May it please the The question is, how far can this court go into considering the full sort of scope of the conduct that was at issue here? And the answer is, I think you look at the totality of the circumstance. What Awan, the Second Circuit opinion, which sort of goes in depth into the issue of what is calculation versus motivation. What Awan says is that what you're trying to do is figure out what is a person thinking is going to happen as a natural result of their acts. That's what calculation is. And in order to figure that out, it's entirely fair to look at the entire range of what the person did with respect to this particular group. Let me end. Go ahead, Judge Smith, and then I'll follow up. I want to get some case law for this because as I look at the Awan case in the Second Circuit and the Mohammed case in the Eighth Circuit, that would contradict what you're saying they seem to say that what you have to show here to get the enhancement is a specific intent as indicated in the crime of conviction that the defendant was trying to achieve the illicit objectives that the enhancement is designed to cover. It does not say that you can just look at the broad scope of what he tried to do here. Indeed, as I asked your opponent, it seems like where Judge Breyer could have taken that into account is in his sentencing within the guidelines he could have varied upwards and so on in evaluating things under 3553A. But I don't find any case law in our circuit and perhaps anywhere else that allows us to do what you're suggesting if I understand you correctly. Or am I missing something? Well, Your Honor, I think in calculations are when they're opening Twitter accounts. You have to look at everything that they've been entertaining with respect to the group. And I think Awan and Mohammed do just that. They look for what exactly did the defendant in those cases think, for example, Lashkar-e-Taiba was doing? Why did he go visit, for example, a Lashkar-e-Taiba office in Pakistan? What were his interactions with the Lashkar-e-Taiba individuals who met with him in the United States? What was he doing? But didn't that deal with the crimes of which they were convicted? What troubles me here is this, what he was convicted of was the material support. And, and, and, and as indicated that that's what we go to. If you look at the totality, as I understand you to be advocating, even if somebody were not charged with a crime that went to the totality of the circumstances, you can still look at that in terms of the enhancement. And I don't find that in the case law. Is there one? Or are there cases? Your Honor, again, I would look to the facts of Awan and specifically the definition of what they is this defendant thinking when, for example, he opens his Twitter accounts? It must mean more than the elements of the qualifying offense, because the qualifying offense itself doesn't automatically qualify you for the enhancement. You're, you're exactly right. Okay, so, but we still have the question of what, how far we can range to look at what his calculation was, if you will, when he committed the original offense. And here, he commits the original offense, he becomes to the, he comes to the attention of the FBI, and then a long series of things occur. And Mike, at some point, don't they become attenuated from his original calculation, if you will? There may be a circumstance where the, the original conduct becomes too attenuated. But here we're talking about facts that occurred over a period of just a matter of months. He meets with the undercovers in July, several times by August is sort of and opening up accounts on behalf of ISIL. And between that whole time, you'll notice, look at his social media activity. The government cited examples in the record, where, for example, after saying, essentially saying goodbye to the undercover agent, he gets online and starts looking, for example, for Halloween parties. And that was of significance to us because... So how does that demonstrate, how does that demonstrate his intent in opening the Twitter accounts? It may demonstrate that he's a really bad and dangerous guy about to commit other crimes. But how does that bear on his intent in opening the Twitter accounts? Well, Judge Breyer found that the chat room in which the defendant was participating, in fact, the chat room in which the defendant admits he was participating, that chat room, Judge Breyer found was replete with posts and calls for violence against the United States government, Syrian government, the Iraqi government, basically every government that ISIL was fighting. And that's that chat room that really sort of spawns the activity, spawns the communications, at least with Abu Muharib al-Iraqi, the second individual for whom Mr. al-Haddad opens these accounts. And if you look, there's really a direct connection between what happens in those chat rooms, and then the discussion with Abu Muharib. And the participation in those chat rooms is before the offense occurs? In one circumstance, it is. There's two sort of separate... That's right. That's what I was... Focus on the one before. What happened there? So I think the one after is a clear-cut situation. But the one before, he opens for a group called Banq al-Ansar, which translates as Bank of the Supporters. And if you look at the actual communications between the defendant and Banq al-Ansar, which Judge Breyer did, those were one of the... He looked closely at these communications and finding that there was a calculation here. Judge Breyer found that really there's... He found that there's no mystery as to the purpose of these accounts. And if you look at the communications, it's clear that it's the defendant who's approaching Banq al-Ansar, and his first words are, greetings, I'm ready to create accounts. He says that out of nowhere. Obviously, they had had some discussion beforehand, or some... There had been some discussion somewhere about what the purpose of these accounts were. It's not as if he was sort of idly approaching random people on Telegram and saying, I'd like to help you open social media accounts. There had to have been some backstory. And if you look at, again, all the conduct leading up to that interaction with Banq al-Ansar... So that's October 31st. Again, that's Halloween. That was a date that was of particular worry to the agents investigating this case because the defendant had talked about exploding bombs at nightclubs in the Bay Area on Halloween. So the fact that he's doing this on Halloween was deeply significant. And then you look at the content of the chat itself, and then you look at what happens after he opens those accounts for Banq al-Ansar. He does it again after participating in this chatroom where he meets Abu Maher al-Baraqi. It's really... And this is, I think, going to the heart of your question, Your Honor. It's really one sort of course of conduct here. It's one chain of events. We were talking about a situation where, for example, maybe the defendant had met with an undercover agent in 2010. And then six years later, goes on to an ISIL chatroom and starts talking to Abu Maher of Banq al-Ansar and says, I'm going to open social media accounts for you. Then I think you've got a factual question as to whether that's too attenuated. Here, Judge Breyer looked at these facts, looked at the timeline, looked at what the defendant had been doing the entire time leading up to the opening of these accounts and found that the purpose in opening these accounts was, as Judge Breyer found it, no mystery. Counsel, with respect, as we mentioned earlier, Judge Breyer is a great judge and he knows how to try cases. But I think in this case, as a member of the Sentencing Commission, he certainly knows he can do an upward variance if he finds these other facts that you have indicated to warrant that. But in this case, what I'm troubled about is if you look at the definition of federal crime of terrorism, you've got to have an offense that's calculated to influence or affect the conduct of government by intimidation or coercion or to retaliate against government conduct. And in this case, when you look at the uncontested facts, as I understand about what this defendant did with respect to these accounts, I don't see that in that. Now, overall, if he'd been able to carry out any of these other things, that would be quite different. But if you look at the cabinet facts that came into this, I don't see it. What am I missing? Your Honor, look at the nature of the service he's providing. He's providing ISIL with new online war at this point with the social media companies. So it's described as a cat and mouse game. ISIL posts horrific acts online on Twitter and on YouTube. The social media companies shut down their accounts. ISIL then sets up new accounts and continues sort of spreading its message of hatred. You want to wind up with what you're saying here? You're out of time. Certainly, Your Honor. I think at the end of the day, look at Judge Breyer's work. Basically, it makes it clear that he looked at the facts, looked specifically at what this defendant had been doing, both in terms of his conduct with the undercover agents and in terms of his conduct online. And for all those reasons, Your Honor, he found that this defendant, quote, had a total lack of empathy for those around him. The 188-1 sentence was appropriate, it was error-free, and this court should affirm it. Thank you, Mr. Haase. Okay, Mr. Kupfelman, we're going to give you two minutes to respond because we took some of your time and my colleague may have some additional questions. So please go ahead. You're still on mute. Your microphone. Thank you. I want to follow up on a couple of things that Government Counsel has suggested here. First is this idea that this was a continuous course of conduct. The district court said this was not a continuous course of conduct. The district court said, look to him like Mr. Alhaggagi was joking. And maybe he didn't mean to do all these things, but there was a real danger that he might make those jokes to the wrong people. So I think the government's entire theory that this was an unbroken course of conduct, evidencing an intent all along to harm people, just doesn't square with the district court's finding and sentencing. Mr. Alhaggagi was a 21-year-old kid who said a lot of terrible things and had a reputation of being a jokester who liked to say things like that. The other thing I want to point out is in response to your question about what is the evidence that Mr. Alhaggagi intended before these chats, which we dispute have any bearing here, but before those chats appear that the government say show his knowledge, the court asks, what was his intent? And the government's kind of backstory. In other words, there is no evidence in the record that he knew before he saw these chats, what the purpose of these accounts were, but the government thinks he must have known. There must be a backstory here. That's not appearing. That is not clear and convincing evidence that is not enough to satisfy the enhancement. The last point that the government makes is about the nature of the service that he's providing. And this is the government. This is the argument that the government advanced in its opposition brief. This notion that ISIS propaganda necessarily has these characteristics that it's akin essentially to firebombing a courthouse. There is no other way to interpret it. That's also a factual assertion that the government is making for which there is no evidence. The government has the burden to prove that they didn't prove it. And in fact, it's wrong. ISIS uses propaganda for all sorts of things, all of it in support of ISIS, but only some of it that would merit the enhancement here. Without proof that Mr. Oligarchy intended it to be that type of social media content, the enhancement can't apply. Okay, your time is up. Let me ask my colleagues whether either has additional questions. I do and it's just an analytical question. I want to make sure I'm in the right. I'm on the right track here. You do agree that the fact that the crime of conviction doesn't require this intent doesn't resolve the question for us. I do agree, your honor. I think that the question we just need the judge is entitled then to say, look, you don't need to have an intent to intimidate or harm to have violated the material age statute. I need to find that somewhere else in the record. Correct. Okay, that's that was my question. Thank you. Okay. Judge, anything from you? No, sir. Thank you. All right. Thanks to both counsel for your very helpful argument. The case just argued is submitted. Thank you, your honor. Thank you, your honors. Thank you.
judges: M. Smith, Jr., Hurwitz, Ezra